C. F. MEDARIS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10556, 16248.. Promulgated February 2, 1928.

*Evert L. Bono, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

461

OPINION.

GREEN: The question is whether the petitioner was a "personal service corporation" during the calendar years 1920 and 1921. That term is defined in section 200 of the Revenue Acts of 1918 and 1921 as "a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; * * *."

The respondent contends that a large portion of the income was ascribed primarily to the activities of "sub-agents"; that 40 per cent of the capital stock was owned by stockholders, namely, the wives, who were not regularly engaged in the active conduct of the petitioner's affairs; that due to the large amount of money borrowed in connection with the loan business, namely, $200,000 to $300,000 at a time, capital was a material income-producing factor; and that for those reasons alone personal service classification should be denied.

· The points relied upon by the petitioner are stated in its brief as follows:

1. That all the capital stock of the petitioner is actually owned by C. F. Medaris, C. L. Medaris and W. R. Medaris who are actively engaged in carrying on the business of the petitioner.

2. That the income earned by the petitioner is commissions received from the writing of insurance, supervising the applications of subagents for insurance, writing the policies, settling the claims of the insured, and from the placing of loans for other parties.

3. That the business carried on by this petitioner requires the personal supervision and efforts of the stockholders of the said corporation.

4. That the income of the petitioner is not due to trading.

5. That the income produced by the petitioner is due primarily to the activities of the stockholders who are actively engaged in furthering the interest of the petitioner's business.

6. That the income is not produced by capital either borrowed or invested.

In connection with the first point the petitioner cites the *Appeal of T. D. Downing Co.*, 2 B. T. A. 469, in which case personal service classification was allowed and in which we said, "It is well settled that the endorsement of a certificate of stock in blank and the delivery thereof passes both the legal and equitable title as between the parties." In that case the evidence showed that two of the principal stockholders had given their wives a substantial amount of stock and on the same day the wives endorsed the stock in blank and delivered it to their husbands "with intent to pass the title thereto." The latter fact is not present in the instant case. All of the evidence on this point consists of the minutes of the board of directors set out in the findings, the tax returns, the affidavits executed by William R. Medaris, and the testimony of the same affiant. In our opinion the minutes are not conclusive evidence that the ownership of the 40 shares of stock issued to the wives was vested in their husbands during the years 1920 and 1921. The returns for those years list each wife as the owner of 20 shares. The affidavits executed by William R. Medaris contain statements that—

The stock ownership of the company, as pointed out in our letter of June 5, 1924, is held as follows:

| | | |
|---|---|---|
| C. F. Medaris | 35 | shares |
| William R. Medaris | 20 | " |
| Charles L. Medaris, son of C. F. Medaris | 5 | " |
| Lida S. Medaris, wife of C. F. Medaris | 20 | " |
| Evelyn H. Medaris, wife of Wm. R. Medaris | 20 | " |

Neither Lida S. Medaris nor Evelyn H. Medaris, the wives of C. F. Medaris and William R. Medaris, respectively, are engaged in the business of this company; nor did they pay anything for the capital stock of the company. Such stock was given to them by their respective husbands. The evidence on this point convinces us that the stock of the petitioner, during the years 1920 and 1921, was actually owned by the individuals to whom it was originally issued in 1918.

The facts in connection with the second, third and fifth points relied upon by the petitioner are very similar to the facts in the *Appeals of Joseph Emsheimer Insurance Agency*, 1 B. T. A. 649; *W. J. Perry Corporation*, 1 B. T. A. 788; *Hurst, Anthony & Watkins*, 3 B. T. A. 53; *D. A. Fisher, Inc.*, 3 B. T. A. 368; and *Conklin-*

*Zonne-Harrison Agency, Inc.*, 3 B. T. A. 544, in which appeals personal service classification was denied.

We have found as a fact the contention stated in the petitioner's fourth point but this alone does not entitle the petitioner to be classed as a personal service corporation.

Regarding the last point relied upon by the petitioner, we believe the evidence shows that borrowed capital was a very material income-producing factor. During each of the years 1920 and 1921 the petitioner borrowed in connection with its loan business approximately $1,000,000 and at times was owing the bank as high as $200,000 to $300,000. It is true the loans were of short duration and were considered by the bank examiners as being the loans of the Union Central Life Insurance Co., but nevertheless the party primarily liable on the notes was the petitioner itself, as it was the sole maker and only gave as collateral the farmers' notes made payable to the Union Central.

Under all the circumstances, we are of the opinion that the petitioner is not entitled to be classed as a personal service corporation.

*Judgment will be entered for the respondent.*